USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/16/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                :
MEDIDATA SOLUTIONS, INC., et al.,       :
               Plaintiffs, :
                :     17 Civ. 589 (LGS)
         -against-             :
                :     **OPINION AND ORDER**
VEEVA SYSTEMS INC., et al.,            :
               Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Plaintiffs Medidata Solutions, Inc. and MDSOL Europe Limited (collectively, "Medidata") bring this action against Defendant Veeva Systems Inc. ("Veeva") for alleged violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, misappropriation of trade secrets, tortious interference with contractual relations, unfair competition, aiding and abetting breach of fiduciary duties and unjust enrichment. Defendant moves to compel arbitration and stay the case. For the following reasons, Defendant's motion is denied.

## I. BACKGROUND

### A. Factual Background

        The following facts are taken from Plaintiffs' First Amended Complaint ("Complaint") and accompanying exhibits. For purposes of this Opinion, all reasonable inferences are drawn in Plaintiffs' favor. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

        Medidata is a global software-as-a-service company that works with the medical, pharmaceutical, and biotechnology research industry to improve clinical trials. Medidata maintains a significant amount of confidential information and trade secrets related to its clinical trial software solutions. To safeguard its confidential information and trade secrets, Medidata requires its employees to enter into confidentiality and non-compete agreements at the

commencement of their employment. As is relevant here, former Medidata employees Alan Mateo, Michelle Marlborough, Sondra Pepe, Jason Rizzo and Richard Young (collectively, the "Former Employees") all signed such agreements at the beginning of their employment with Medidata.

The Mateo, Pepe and Rizzo agreements (the "Agreements") provide that, with limited exceptions, "ANY DISPUTE OR CONTROVERSY ARISING OUT OF OR RELATING TO ANY . . . BREACH OF THIS AGREEMENT, SHALL BE SETTLED BY ARBITRATION[.]" Mateo, Pepe and Rizzo are the sole signatories to their respective Agreements with Medidata.

Veeva is a cloud-computing software company founded in 2007. Between 2014 and 2016, Veeva induced the Former Employees to join Veeva and directly compete with Medidata in violation of the Agreements. Veeva also induced the Former Employees to divulge Medidata's trade secrets and confidential information. Veeva continues to target Medidata's employees in order to utilize Medidata's confidential information to compete with Medidata.

### B. Procedural History

Plaintiffs initially sued Veeva and all five Former Employees. On February 21, 2017, Veeva and the Former Employees sent a letter to Medidata stating their intention to file a petition to compel arbitration based on the arbitration clauses in the Agreements. Pursuant to a Scheduling Order, Veeva was directed to file its anticipated motion by March 3, 2017. On March 1, 2017, Plaintiffs voluntarily dismissed the Former Employees, leaving Veeva as the sole defendant in this case. Veeva timely filed the instant motion two days later.

## II. STANDARD

The Federal Arbitration Act ("FAA") "embod[ies] [a] national policy favoring arbitration." *Id.* at 228 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011))

(alteration in original). However, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original); *accord Nicosia*, 834 F.3d at 229 ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so.") (citation omitted). The court considers two factors when deciding if a dispute is arbitrable: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (citation omitted). Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party." *Id.* (citation omitted).

### III. DISCUSSION

The FAA "does not require parties to arbitrate when they have not agreed to do so," *id.* at 229, but a non-signatory to an arbitration agreement may enforce that agreement under the principle of equitable estoppel where (1) "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed" and (2) there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute" with the non-signatory. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010); *accord Barreto v. Jec II, LLC*, 16 Civ. 9729, 2017 WL 3172827, at *6

3

(S.D.N.Y. July 25, 2017).

Here, Plaintiffs and Defendant have no contractual or other relationship that would lead to the conclusion that Plaintiffs should be compelled to arbitrate their dispute with Defendant. The Second Circuit has repeatedly disavowed the existence of a relationship sufficient to compel arbitration in substantially similar circumstances to this case. In *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008), the Second Circuit rejected an attempt by a non-signatory to enforce an arbitration clause in an agreement on the ground that "there would be no unfairness" in allowing the plaintiff "to insist that, while he agreed to arbitrate with his contractual counterparty *y*, he in no way consented to extend that agreement to an entity [(the non-signatory defendant)] which tortiously subverted his rights under the agreement." *Id.* at 362.

Likewise, in *Ross v. American Express Co.*, 547 F.3d 137 (2d Cir. 2008), the Second Circuit found "utterly lacking" any relationship between signatory plaintiffs and a non-signatory defendant "sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with [the non-signatory defendant]" where the non-signatory defendant was a competitor of the signatory defendant and "allegedly attempt[ed] to subvert the integrity of the . . . agreements" containing the arbitration clause. *Id.* at 145–46. In short, where a relationship between the parties is formed as a result of alleged wrongdoing by the non-signatory, that relationship does not justify a finding of equitable estoppel that would warrant a non-signatory enforcing an arbitration clause against a signatory. *See, e.g.*, *Sokol*, 542 F.3d at 362; *accord In re Document Techs. Litig.*, No. 17 Civ. 3917, 2017 WL 2840280, at *3–4 (S.D.N.Y. Apr. 27, 2017) (non-signatory defendant lacked sufficient relationship with plaintiff to compel arbitration where plaintiff sued non-signatory defendant for inducing plaintiff's former employees to misappropriate plaintiff's trade secrets).

Here, the Complaint alleges that Defendant poached the Former Employees from Plaintiffs in violation of the non-competition provisions in the Agreements, and induced the Former Employees to share trade secrets with Defendants in further violation of the Agreements. Defendant and Plaintiffs are competitors, and Plaintiffs have never treated Defendant as a party to the Agreements. There was no reason for Plaintiffs to believe that they were "entering into any kind of relationship" with Defendant by having the Former Employees sign the Agreements. *Ross*, 547 F.3d at 148. As Defendant's position in this litigation is that of a third party allegedly attempting to subvert the integrity of the Agreements, estoppel is not warranted. *See id.* at 146; *Sokol*, 542 F.3d at 362; *In re Document Techs. Litig.*, 2017 WL 2840280, at *4.

Defendant argues that "the relationship factor" is satisfied by (1) "allegations of concerted action" between the Former Employees and Defendant and (2) Defendant's status as the Former Employees' current employer. Defendant contends that the Agreements contemplate a relationship between the Former Employees and a future employer because they include confidentiality and non-compete clauses. Defendant's attempts to create a "relationship" with Plaintiffs sufficient to compel arbitration misapprehend the Second Circuit's holdings.

First, allegations of collusion alone are insufficient to establish a relationship sufficient to find estoppel. *See Ross*, 547 F.3d at 146–48 (distinguishing *Denney v. BDO Seidman, LLP*, 412 F.3d 58 (2d Cir. 2005), and finding that "the application of estoppel in the context of conspiracy allegations is problematic" and that "[s]uch interaction has no resemblance to the conduct of the parties in this Court's equitable estoppel cases").

Second, the fact that Defendant hired the Former Employees does not create a relationship with Plaintiffs that compels a finding that Plaintiffs are estopped by the Agreements from suing Defendant in court. The Second Circuit has found relationships between a signatory

5

and non-signatory sufficient to compel arbitration where: (1) the non-signatory was a parent of the signatory company, *see JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177–78 (2d Cir. 2004), (2) the non-signatory was a co-employer of the plaintiff signatory, who knew about the co-employment relationship at the time she signed the arbitration agreement, *see Ragone*, 595 F.3d at 118, 127, (3) the non-signatory was explicitly named in the contract and arbitration agreement as having tasks to perform under that contract, *see Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406–08 (2d Cir. 2001) and (4) identity of interests existed between signatories and non-signatories to contract, which was established with the signatory plaintiff's knowledge and consent, *see Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 90–91, 97 (2d Cir. 1999). In each case, the estoppel "flowed . . . from the conclusion that the relationships among the parties developed in a manner that made it unfair for [the party resisting arbitration] to claim that its agreement to arbitrate ran only to [its counterparties under the agreement] and not to [a related non-signatory]." *Sokol*, 542 F.3d at 361. Here, nothing in the record suggests that Plaintiffs intended to give up their right to court adjudication of claims against Defendant, or that it would be unfair for Plaintiffs to avoid arbitration.

Plaintiffs' voluntary dismissal of the Former Employees from this lawsuit does not change the fairness analysis, or the fact that they never agreed to arbitrate their claims against Defendant. Regardless of whether the Former Employees could enforce the arbitration agreement against Plaintiffs, Defendant Veeva cannot. *See, e.g.*, *Nicosia*, 834 F.3d at 229; *see also In re Document Techs. Litig.*, 2017 WL 2840280, at *1, *4 (granting signatory's motion to compel arbitration against fellow signatory and denying non-signatory's motion to compel arbitration against signatory).

6

As Defendant is not entitled to compel Plaintiffs to arbitrate this litigation, Defendant's motion to stay the litigation pending arbitration is also denied. *See Sokol*, 542 F.3d at 363.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration and stay the case is DENIED. The Clerk of Court is respectfully directed to close the motion at Docket No. 42.

Dated: August 16, 2017
      New York, NY

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**