

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

**Khari J. Tillery**
(415) 773-6621
ktillery@keker.com

March 5, 2021

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY  10007

Re:   *Medidata Solutions, Inc., et al. v. Veeva Systems Inc., et al.*, Case No. 1:17-cv-00589

Dear Judge Schofield:

Veeva takes its discovery obligations seriously. And in this case, Veeva has taken extraordinary steps to collect, preserve, and produce all potentially relevant information in its possession. And, to be clear, Medidata makes *no allegation* that any document, metadata, or other type of information stored on any Veeva-issued system or device was spoliated. Nor could it.

Rather, Medidata alleges that Tony Tsai—a former "lower-level Medidata employee[]," Dkt. 1 (Complaint) at 35, n.2—who Veeva hired a decade ago and who Medidata did not name in its complaint as one of the five Veeva employees allegedly responsible for misappropriating Medidata trade secrets—destroyed certain metadata and other forensic artifacts associated with non-Veeva documents stored on his *personal* electronic devices. At no point did Veeva participate in or permit any spoliation of data on its systems or on Mr. Tsai's personal devices. Immediately after learning that Mr. Tsai had retained documents from his Medidata employment (which ended in 2011), Veeva provided Mr. Tsai with an oral litigation hold and arranged for separate counsel to represent him to coordinate the return of those documents pursuant to Mr. Tsai's *personal* contractual obligations to Medidata. Veeva then searched Mr. Tsai's custodial files at Veeva for relevant documents and metadata, all of which had been preserved since the start of this litigation, and it produced those Veeva documents to Medidata. Because Medidata cannot make the threshold showing under Rule 37(e) that *Veeva* "should have preserved" the metadata and artifacts stored on Mr. Tsai's personal devices or "failed to take reasonable steps" to do so, and because Medidata cannot show any entitlement to the drastic sanctions it seeks, Medidata's motion for sanctions against Veeva should be denied without further briefing.

*Background.* Veeva has taken extraordinary steps to preserve, collect, and produce responsive documents within its possession—including documents on Mr. Tsai's Veeva-issued accounts and devices. Just days after Medidata served its original complaint, Veeva issued a company-wide litigation hold for a wide variety of corporate systems used by Veeva employees in the ordinary course of business, including corporate emails, individual employee drives, shared drives, product development software, and customer relationship management tools. *See* Dkt. 269, Ex. A (10/28/2019 Tillery Letter). Veeva also issued written litigation hold notices to at least eighteen different employees involved in the development of Vault EDC and Vault CTMS, including (1) *all* of the former Medidata employees identified in Medidata's complaint as having allegedly misappropriated Medidata trade secrets; and (2) *all* current and former Veeva employees who were named in either Veeva's or Medidata's Initial Disclosures (with the

The Honorable Lorna G. Schofield
March 5, 2021
Page 2



exception of Veeva's CFO). *Id.* Even before the situation with Mr. Tsai arose, Veeva had already spent ***more than 4,000 attorney hours*** reviewing over ***5,000,000 potentially responsive documents*** and produced ***nearly 30,000 documents***. This effort goes far beyond this Court's 160-hour limit for searching, collecting, and reviewing ESI. *See* I.R. II.A.

Further, Medidata did not identify Mr. Tsai as a significant player in this case—nor was there any reason for Veeva to believe that he was—until very late in the discovery process. In January 2017, Medidata filed a 50-page complaint alleging that five former Medidata employees misappropriated Medidata trade secrets and brought them to Veeva. Medidata named each of those five former employees as defendants in the case, and its complaint included dozens of paragraphs about each of those employees and even pictures of them. *See generally* Dkt. 1. Medidata made no allegation in its complaint (or any subsequent amendment) that Mr. Tsai had misappropriated Medidata trade secrets or used them at or disclosed them to Veeva. Rather, Medidata briefly mentioned Mr. Tsai in one sentence of one footnote of the complaint, referring to him as one of eleven "lower-level Medidata employees" hired by Veeva. *Id.* at 35, n.2. Indeed, Mr. Tsai left Medidata in April 2011—*five years* before Veeva decided to enter the EDC and CTMS market and almost *six years* before Medidata filed the present action. Then, during the initial fact discovery period—which lasted more than 15 months—Medidata did not (1) name Mr. Tsai in its initial disclosures; (2) identify Mr. Tsai as a "key custodian" under the Court's Individual Rules relating to the collection of ESI (I.R. II.A.); or (3) seek to depose Mr. Tsai.

Nor did Veeva have a reason to believe that its discovery obligations extended to a search of Mr. Tsai's personal devices. As noted above, Mr. Tsai left Medidata in 2011. Any Medidata document that he retained in his personal possession from his time at Medidata was, by definition, more than five years old by the time Medidata filed this case in January 2017. This Court's Individual Rules state that "a party from whom [ESI] has been requested ***shall not be required*** to search for responsive ESI … [t]hat was created more than five years before the filing of the lawsuit." I.R. II.A (emphasis added). Indeed, early in the discovery process, Medidata itself proposed to Veeva an ESI Stipulation, whereby the parties "presumptively have no obligation to preserve . . . ESI created before January 26, 2012"—*i.e.*, ESI created more than five years before the filing of the lawsuit. Dkt. 269, Ex. B (6/1/2018 Jarrett Letter).

Medidata asserts in its letter brief that documents and forensic data from Mr. Tsai's personal devices were responsive to Medidata discovery requests. But Medidata neglects to mention that Veeva was entirely transparent that it considered documents in employees' personal possession to be outside the scope of what the parties were obligated to search. Notably, Medidata took the same position with respect to documents in the personal possession of its employees. *See* Dkt. 269, Ex. D (2/5/2019 de Vries Depo. Tr.) at 361:2-362:18

Nonetheless, when Veeva learned that Mr. Tsai might have a hard drive in his personal possession containing Medidata documents, it took immediate steps to ensure that the materials were preserved, collected, and returned to Medidata pursuant to Mr. Tsai's personal contractual obligations to Medidata, including: (1) on July 29, 2019, Veeva issued an oral litigation hold notice to Mr. Tsai; (2) on July 30, 2019, Veeva assisted Mr. Tsai in retaining separate counsel to return any Medidata documents in his personal possession; and (3) on August 14, 2019, Veeva notified Medidata of the situation, including that the hard drive—later identified as a D-Link NAS device—had been "delivered to a third-party eDiscovery vendor for preservation

The Honorable Lorna G. Schofield
March 5, 2021
Page 3

purposes." *See* Dkt. 269, Ex. E (8/14/2019 Tillery Letter). The alleged incidents of spoliation by Mr. Tsai—which relate to his personal QNAP NAS device (not the D-Link) and personal iMac computer—occurred on July 31 and August 21, 2019, respectively—*after* Mr. Tsai had been given a litigation hold notice and without any notice to or involvement from Veeva.

*Argument.* Medidata's bid for sanctions fails for many reasons. *First*, Medidata cannot make the threshold showing that metadata or forensic artifacts stored on Mr. Tsai's personal devices "should have been preserved [by Veeva] in the anticipation or conduct of litigation" or that Veeva "failed to take reasonable steps" to do so. Fed. R. Civ. P. 37(e). As discussed above, at the outset of this litigation, Veeva took extensive steps to preserve potentially relevant evidence within its possession, including metadata associated with documents on Veeva's corporate systems. Medidata does not (and cannot) argue that any such information was lost. Veeva's discovery efforts complied with, and in many instances exceeded, the requirements set forth in the Federal Rules, the SDNY Local Rules, this Court's Individual Rules, and the discovery agreements between the parties. Indeed, Medidata's claim that Veeva had an obligation to collect not only documents in Mr. Tsai's personal possession, but also any metadata and forensic artifacts associated with those documents, ignores the fact that both parties treated documents in the personal possession of their respective employees as outside the scope of party discovery, and the legal principle that "the duty to preserve extends to those employees likely to have relevant information—the 'key players' in the case." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Mr. Tsai was not a "key player" for most of this case's history—as evidenced by Medidata's own pleadings and discovery conduct, and the fact that he joined Veeva five years *before* Veeva decided to enter the market at issue in this case. Finally, when Veeva discovered that Mr. Tsai had retained Medidata documents in his personal possession, Veeva acted swiftly and appropriately. The alleged spoliation occurred only *after* Mr. Tsai was provided with a litigation hold notice and without the knowledge or consent of anyone at Veeva.

*Second*, Medidata cannot show that it is entitled to prejudice-curing remedies under Rule 37(e)(1) or an adverse-issue sanction under Rule 37(e)(2). To justify curative measures under Rule 37(e)(1), Medidata would have to show "prejudice from the loss of" ESI and request "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Because the ESI at issue consists of information *about* documents—not the contents of the documents themselves—Medidata cannot claim that ESI is relevant without first establishing the importance of the underlying document, which it cannot do, particularly in light of the fact that there is no allegation that Veeva information on Veeva systems was lost.

Medidata overreaches even more in demanding an adverse inference jury instruction under Rule 37(e)(2). An adverse inference instruction is a drastic remedy that requires the movant to show that the opposing party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Medidata does not even *allege* in its letter brief that Veeva acted with an intent to deprive Medidata of relevant information. Nor could it. There is no evidence that Veeva acted with an "illicit motive," and there is overwhelming evidence that it did not. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018). As discussed above, Veeva's conduct with respect to Mr. Tsai has been responsible and appropriate.

For the reasons stated above, Medidata's motion should be denied without further briefing. However, given the technical nature of the dispute and the severity of the sanctions Medidata is seeking, should the Court determine that further briefing is appropriate, Veeva respectfully requests four weeks to file its opposition brief, making it due on April 9, 2021.

The Honorable Lorna G. Schofield
March 5, 2021
Page 4

Respectfully submitted,

Khari J. Tillery

cc:  All counsel of record

1657125