# MUNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDIDATA SOLUTIONS, INC., and MDSOL EUROPE LIMITED,<br><br>                    Plaintiffs,<br><br>    v.<br><br>VEEVA SYSTEMS INC.,<br><br>                    Defendant. | Civil Action No. 1:17-cv-00589-LGS<br><br>Hon. Lorna G. Schofield<br><br>**VEEVA'S MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMOY FROM MEDIDATA EXPERT DAVID HALL** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Medidata overreached on damages. It made the strategic decision to proffer an expert report that failed to separately value *any* individual trade secret or *any* of the sixteen *categories* of trade secrets addressed in the Court's summary judgment order. *See* Dkt. 378 (MSJ Order). Instead, Medidata's damages expert, David Hall, lumped *all* of Medidata's alleged trade secrets into three broad "groups" and valued those "groups" as a unified whole so that Medidata could proffer huge damages figures. When the Court eliminated six entire categories of trade secrets due to Medidata's failure to describe them, it effectively gutted Mr. Hall's trade-secret "groups." Medidata clearly cannot recover damages for the eliminated trade secrets, but Hall cannot excise them from his report because he did not separately value them. As a result, his opinions must be excluded. Moreover, even setting aside the impact of the Court's summary judgment order, two of Hall's four opinions must be excluded because they seek remedies that are legally unavailable.

### I.   BACKGROUND

Hall offered four damages opinions, each of which assumes that Veeva misappropriated three "groups" of trade secrets that Hall constructed for this litigation. Declaration of Divya Musinipally, Exhibits A and B (Corrected Expert Report of David Hall (Rep.) and Attachments (Attach.)). Hall did not value any individual trade secret within these "groups," nor did he value any of the sixteen categories the Court addressed in its MSJ Order. *See* Musinipally Decl. Ex. C (Hall Depo.) at 344:12-22 ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

The chart below lists each of Hall's three trade-secret "groups" and shows how the sixteen trade-secret categories addressed by the Court fit into those three groups. Trade-secret

1

categories that the Court eliminated on summary judgment are shown in strikethrough:

| Hall's three trade-secret "groups." See Rep. at 5; Hall Depo. at 60:20-69:4. | Trade-secret categories within Hall's three groups that have been eliminated by the Court. See Dkt. 378, Appx. A |
|---|---|
| ▮ | **EDC**<br>• Platform Design and Integration Concepts<br>• ~~Software Architecture Design Processes and Principles~~<br>• Product Development Planning Strategies<br>• ~~Customer-Specific Product Development Information~~<br>• Product Development Implementation information<br>**CTMS**<br>• ~~Platform Design and Integration Concepts~~<br>• ~~Software Architecture Design Processes and Principles~~<br>• Product Development Planning Strategies<br>• ~~Customer-Specific Product Development Information~~<br>• Product Development Implementation information |
| ▮ | *EDC and CTMS combined*<br>• Client Solutions Footprint<br>• Pricing Information<br>• Sales Team Training Materials |
| ▮ | *EDC and CTMS combined*<br>• Information Regarding Sales Activities<br>• ~~Overall Business Plans~~<br>• Go-to-Market Strategy |

## II.   ARGUMENT

### A.   The Court's MSJ order renders Hall's Opinions irrelevant.

The Court's MSJ order obliterated two of the three trade-secret "groups" Hall purported to value. Because Hall used an "all or nothing" approach instead of separately valuing individual trade secrets or categories of trade secrets within his three "groups," he has no way to apportion damages to the subset of surviving trade secrets. Thus, each of his opinions must be excluded.

**Opinion 1:** In his Opinion No. 1, Hall purports to calculate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rep. at 39. The problem is that Hall's calculations of total development costs

2

*indisputably* include costs to develop "trade secrets" that are no longer part of this case—namely, the categories of trade secrets shown in strikethrough above. Medidata plainly cannot recover damages based on costs to develop trade secrets that it has lost on summary judgment.

Courts routinely exclude "all-or-nothing" damages opinions like Hall's in cases where a subsequent event makes it impossible for the plaintiff to prove misappropriation of all of the trade secrets alleged. *See*, *e.g.*, *Alifax Holding SpA v. Alcor Sci. Inc.*, 387 F. Supp. 3d 170, 174 (D.R.I. 2019) (damages opinion encompassing withdrawn trade secrets was "on its face, unmoored to the scope of the alleged harm and must be excluded"); *LivePerson, Inc. v. [24]7.AI, Inc.*, No. 17-cv-01268-JST, 2018 WL 6257460, at *2 (N.D. Cal. Nov. 30, 2018) ("Dr. Choi's opinion must be excluded because he does not apportion trade secret misappropriation damages among particular alleged trade secrets, and offers no methodology for the jury to calculate trade secret misappropriation damages on fewer than all of the 28 alleged trade secrets in the case."); *Ford Motor Co. v. Versata Software, Inc.*, No. 15-10628, 2018 WL 10733561, at *11 (E.D. Mich. July 9, 2018) (excluding opinion that failed to apportion multiple trade secrets because the "all-or-nothing approach does not fit well with the jury's task and poses a substantial risk of confusing and/or misleading the jury"). Put differently, an opinion that assumes misappropriation of multiple trade secrets is "**useless to the jury**" and must be excluded if, as happened here, some of the trade secrets are later eliminated. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1076 (N.D. Cal. 2005) (emphasis added); *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1317 (Fed. Cir. 2018) (vacating damages award where expert "did not explain which of the trade secrets contributed to what amount of profit to be disgorged[,]" and "assigned all profits to the misappropriation of all trade secrets").

Here too, Hall uses an "all-or-nothing" approach that does not separately value any

3

individual trade secret or any category of trade secret. Because the Court eliminated trade secrets from two of Hall's three "groups" (*see* chart, *supra* at 2), Opinion 1 must be excluded.

**Opinion 4:** Hall uses his calculation of development from Opinion 1 in his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Rep. at 74 (referencing cost calculations from Opinion 1). Thus, Opinion 4 must be excluded for the same reasons explained above.

**Opinions 2-4:** These opinions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rep. at 17; Attach. 2-3; Hall Depo 104-105. According to Hall, Medidata's technical expert, Prof. Jim Davies, told Hall that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rep. 51-52, 54-55 (citing "Discussion with Professor Davies"). But Davies proffered his "head start" opinion at a time when Medidata was asserting misappropriation of ***all*** trade secrets originally at issue in this case. Since then, the number of trade secrets has decreased dramatically. There is no basis whatsoever—let alone a reliable basis—for Hall (or Davies) to assume that the length of Veeva's alleged "head start" should stay the same regardless of how many trade secrets it used. *See, e.g., Alifax*, 387 F. Supp. 3d at 174. Accordingly, Hall's Opinions 2-4, which rely on a "head start," must be excluded.

**B.    Opinions 2 and 4 must be excluded because they seek improper remedies.**

In Opinion 2, Hall opines Veeva should disgorge up to ▮▮▮▮▮▮▮▮▮▮ due to the alleged misappropriation. Rep. at 40-41, Attachs. 2-6—2-9. But Hall concedes that, ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rep. at 46,

4

51. █████████████████████████████████████████████████████

█████████████████████████████████████████████████████

Veeva cannot be forced to disgorge future "profits" that it *indisputably* has not made. *See*, *e.g.*, *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 898 (E.D. Wis. 2010) ("[A]warding a share of hypothetical future profits is an invalid way to value the benefit received by a defendant in an unjust enrichment action."); *Jack v. Ringleader Boxing Mgmt. Co.*, LLC, No. 2:14-CV-00318-JAD, 2014 WL 6388845, at *2 (D. Nev. Nov. 14, 2014) ("The remedy for unjust enrichment is the return of benefits previously conferred not those yet to be conferred."); *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1313 (2010) ("[W]here a defendant has not realized a profit or other calculable benefit as a result of his or her misappropriation of a trade secret, unjust enrichment is not provable[.]"); *Fidelitad, Inc. v. Insitu, Inc.*, No. 13-CV-3128-TOR, 2016 WL 7508843, at *5 (E.D. Wash. July 8, 2016) (excluding expert opinion that sought disgorgement of alleged future profits because such profits had not been received "and therefore cannot be relevant"); *cf. also Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir.1983) (unjust enrichment requires "return" of money or property the defendant received).

Hall's reasonable royalty opinion (Opinion 4) must be excluded for similar reasons. There, Hall ████████████████████████████████████ But a "reasonable royalty" is a form of "compensatory damages" that is intended to remedy *past* harm. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1127 (S.D.N.Y. 1970); *see also* 18 USC § 1836(b)(3)(B). It can be an upfront "lump-sum royalty based on expected sales or a running royalty based on a percentage of *actual sales*." *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 188 (S.D.N.Y. 2002) (emphasis added). A royalty on the "future use of the trade secret," however, is injunctive relief, not compensatory damages. 18 U.S.C.A. § 1836(b)(3)(A).

                        KEKER, VAN NEST & PETERS LLP

Dated:  March 18, 2021

                        By:   */s/ Khari J. Tillery*
                               KHARI J. TILLERY (*pro hac vice*)
                               REID P. MULLEN *(pro hac vice)*
                               BENJAMIN D. ROTHSTEIN
                               MOLLY C. VILLAGRA *(pro hac vice)*
                               DIVYA MUSINIPALLY (*pro hac vice*)
                               Keker, Van Nest & Peters LLP
                               633 Battery Street
                               San Francisco, CA 94111-1809
                               Telephone: 415.391.5400
                               Facsimile:  415.397.7188
                               ktillery@keker.com
                               rmullen@keker.com
                               brothstein@keker.com
                               mvillagra@keker.com
                               dmusinipally@keker.com

                               KEVIN J. BRUNO
                               ANDREW T. HAMBELTON
                               Blank Rome LLP
                               The Chrysler Building
                               405 Lexington Avenue
                               New York, NY  10174-0208
                               Telephone:  212.885.5000
                               Facsimile:  212.885.5001
                               kbruno@blankrome.com
                               ahambelton@blankrome.com

                               *Attorneys for Defendant*
                               *VEEVA SYSTEMS INC.*