UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDIDATA SOLUTIONS, INC. and MDSOL EUROPE LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>VEEVA SYSTEMS INC.,<br><br>DEFENDANT. | Civil Action No. 1:17-cv-00589-LGS-RWL<br><br>**DEMAND FOR JURY TRIAL**<br><br> |

**PLAINTIFFS MEDIDATA SOLUTIONS, INC. AND MDSOL EUROPE LIMITED'S MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY AND OPINIONS BY ANDREW CRAIN**

Plaintiffs Medidata Solutions, Inc. and MDSOL Europe Limited (collectively "Medidata") respectfully move to preclude Defendant Veeva Systems Inc. ("Veeva") from offering evidence, testimony or argument as to testimony or opinions by Veeva's rebuttal forensic expert, Andrew Crain.

## I.     FACTUAL BACKGROUND

The Court reopened discovery after the parties served opening expert reports due to Veeva's failure to timely identify and produce **over 200,000** Medidata documents retained by one of its employees, Anthony Tsai ("Tsai"). *See* Dkt. 251; Dkt. 259. In order to assess the nature and extent of Tsai's use of Medidata's confidential information, Medidata retained Julian Ackert, a computer forensic expert, to analyze Tsai's devices and data.

As supplemental discovery into Tsai's retained documents proceeded, it became clear not only that Veeva had benefited from Tsai's possession of Medidata documents, but also that Veeva allowed Tsai to **permanently delete** Medidata documents, associated metadata, and device artifacts that would have enabled a more complete reconstruction of Veeva's use of Medidata's trade secrets. *See* Dkt. 382. In particular, supplemental discovery established, among other things, that Tsai (1) retained Medidata documents ▬▬▬▬▬▬[1] after he left Medidata in **2011**, *see* Ex. 1 [Ackert 2d Suppl. Rpt] ¶ 35; (2) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in **2012**, *see id.* ¶ 36; (3) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ on or around **July 31, 2019**, *see id.*; and (4) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See id.* After considering the remaining forensic evidence, Ackert observed and documented ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

████████████████████████████████████████████████████████████

████████. Ex. 1 [Ackert 2d Suppl. Rpt.] ¶¶ 29–33. Thus, the scope of Tsai's and Veeva's access to and use of Medidata's confidential information on Tsai's devices includes *at least*, but is not limited to, those instances reflected in the remaining forensic artifacts.

In response to Ackert's conclusions, Veeva submitted a rebuttal report by Andrew Crain. Crain opined that ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Ex. 2 [Crain Rpt.] ¶ 14. According to Crain, ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ *Id.* ¶¶ 14, 26 (emphasis added). In other words, according to Crain, ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████. *See id.* ¶ 26 ████████████████

████████████████████████████████████████████████████████████

████████).

This conclusion about ████████████████████████████ is the basis for each of Crain's opinions relating to the scope of Medidata material that Tsai accessed, copied, or used during his time at Veeva. For example, Crain's first opinion starts with ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. *See id.* ¶ 31. His opinion that ████

████████████████████████████████████████████████████████████

2

███████████████████████████████████. *See id.* ¶ 41.  Finally, Crain's opinion ████████████████████████████████████████████████████████████████████████████. *See id.* ¶ 47.[2]

Crain also opined that ████████████████████████████████████ ████████████████████████████████ *Id.* ¶ 35.  Crain based that conclusion on two facts: (1) ████████████████████████████████████ and (2) ████████████████████████████████.  *See id.* ¶ 35.  In other words, according to Crain, ████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████  Crain's analysis rests on the premise that, ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████. *See* Ex. 3 [Crain Tr.] at 135–36.  Indeed, Crain asserts that ███████████████████ ████████████████████████████████████████████████████████████ ████████████" Ex. 2 [Crain Rpt.] ¶ 26 (emphasis added).

But the foundational premise of Crain's analysis is demonstrably false.  The QNAP NAS to which Tsai copied the documents ***could not have been in Tsai's possession on April 17, 2011*** because it was not even released until ***September*** 2011.  Ex. 4 [Crain Dep. Ex. 4] (announcing QNAP NAS availability in September 2011).  As Crain admitted, ████████████████████ ████████████████████████████████████████████████████████████████. Ex. 3

---

[2] The two remaining sections do not provide an independent basis for Crain to offer opinions or testimony. ████████████████████████████████████████████████████████████████ ████████████████ *See id.* ¶ 53. ████████████████████████████████████████ *See id.* ¶¶ 54–57.

3

[Crain Tr.] at 144–47.  The only explanation consistent with the complete record is that ▮

▮, *see* Ex. 5 [Tsai Tr.] at 137, ▮

▮.

## II.    ARGUMENT

### A.    Crain's Opinions Should Be Excluded Because His Analysis Is Unreliable

Federal Rule of Evidence 702 requires that trial courts "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  Expert opinion should be excluded as unreliable where it is "not supported by sufficient facts . . . or when indisputable record facts contradict or otherwise render the opinion unreasonable."  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 241 (1993).  Courts exclude expert testimony that is "speculative or conjectural," *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996), and this Court should not admit an opinion where "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Crain's opinions should be excluded under that standard because his analysis assumes a fact that is indisputably contrary to the record and this ***not*** reliable.  Crain ***assumes*** that ▮

▮—a conclusion that underlies all his opinions.  *See* Ex. 2 [Crain Rpt.] ¶ 26, 35.  By "contradicting [Tsai's] testimony" Crain is, in essence, "seeking to provide his own version" of events, and thus his opinion is "little more than speculation."  *Barrett v. Black & Decker (U.S.) Inc.*, No. 06-cv-1970, 2008 WL 5170200, at *8 (S.D.N.Y. Dec. 9, 2008).

Nor did Crain undertake any analysis to confirm or exclude alternative explanations.  He

4

did not test (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (4) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (5) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (6) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, or (7) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 3 [Crain Tr.] at 153–164. Crain's disclosed opinions therefore rely on an inaccurate assumption that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but offer no analysis to corroborate that assumption, and for that reason Crain's opinions should be excluded. *See Gen. Elec.*, 522 U.S. at 146 (rejecting opinion "connected to existing data only by the *ipse dixit* of the expert").

### B. Any Alternative Undisclosed Analysis Should Be Precluded

To be admissible, expert testimony must also be disclosed in the expert's report. Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(B); *see also Foley v. United States*, 294 F. Supp. 3d 83, 100 (W.D.N.Y. 2018). Any deviation from Crain's opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* Ex. 2 [Crain Rpt.] ¶ 26, 35, would necessarily involve analysis not disclosed in his report. "[E]xperts are not free to . . . continually supplement their opinions[,]" and Crain should not be allowed to do so here. *Sandata Techs. Inc. v. Infocrossing Inc.*, No. 05-cv-9546, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007). Indeed, Crain's deposition testimony justifies this concern: though agreeing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Crain hypothesized contrary to the record that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, a possibility for which Crain admitted he had no "concrete proof." *See* Ex. 3 [Crain Tr.] at 97–101, 147–50.

### III. CONCLUSION

For the foregoing reasons, Medidata respectfully asks that this Court grant its motion.

5

Dated: March 18, 2021

*/s/ Claudia Ray*
Claudia Ray
Yosef J. Riemer
Joseph A. Loy
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900

Benjamin Yaghoubian
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Tel: (310) 552-4200
Fax: (310) 552-5900

Patrick Arnett
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
Tel: (202) 389-5100
Fax: (202) 389-5200

*Attorneys for Plaintiffs*
*Medidata Solutions, Inc. and*
*MDSOL Europe Limited*