# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDIDATA SOLUTIONS, INC., and MDSOL EUROPE LIMITED,<br><br>                     Plaintiffs,<br><br>   v.<br><br>VEEVA SYSTEMS INC.,<br><br>                     Defendant. | Civil Action No. 1:17-cv-00589-LGS<br><br>Hon. Lorna G. Schofield<br><br>**DEFENDANT VEEVA SYSTEMS INC.'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY AND OPINIONS BY ANDREW CRAIN** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

This motion focuses on expert opinions regarding the conduct of a Veeva employee, Tony Tsai, who left Medidata and joined Veeva in *April 2011*—five years before Veeva even decided to enter the same product space as Medidata—and retained a copy of the files from his old Medidata computer on a personal external storage device (the "QNAP NAS"). Medidata has no direct evidence that Mr. Tsai disclosed any alleged Medidata "trade secrets" to Veeva: after extensive discovery, Medidata has identified only four emails in which Mr. Tsai even *mentions* Medidata. *See* Dkt. No. 328 at 28-29. So, Medidata intends to offer circumstantial evidence that Mr. Tsai may have *accessed* certain Medidata files after joining Veeva.

Both parties have disclosed computer forensics experts on this issue. Both experts draw conclusions about Mr. Tsai's interactions with his old Medidata files based on forensic artifacts. But the experts disagree over *which* artifact is the more reliable indicator. Medidata's expert, Julian Ackert, prefers ███████████ Mr. Ackert opines, based on ██████████████████████████████████████████████████████████████████████████████ Declaration of Divya Musinipally in Support of Opposition to Motion in Limine No. 3 ("Musinipally Decl."), Ex. A, ¶ 62.[1] Veeva's expert, Andrew Crain, opines that last modified dates are a poor way to determine which *specific files* Mr. Tsai interacted with, because a user can cause the last modified dates for an *entire folder* to "update" merely by opening the folder and browsing its contents, and *without touching the contents of any specific file*. Musinipally Decl., Ex. B, ¶¶ 48-51. Mr. Crain further opines that a different forensic artifact—"**last accessed dates**"—are more reliable here, because they update on a per-document (not per-folder) basis when a user opens, copies, email-attaches, or otherwise interacts with that particular file **using a**

---

[1] All emphases throughout are added unless otherwise indicated.

1

*Mac computer* (like the computers Mr. Tsai has used for nearly his entire tenure at Veeva, including the 2016-2017 time period when Veeva developed its EDC and CTMS products). *Id.*, ¶¶ 26-27 & n.9; *see also* Musinipally Decl., Ex. C at 157:13−16. Mr. Crain concludes that Mr. Tsai interacted with *at most* 1,460 retained files on the QNAP NAS after leaving Medidata nearly a decade ago. Musinipally Decl., Ex. B, ¶¶ 14, 29.

Medidata argues that the Court, not the jury, should resolve this clash of the experts because (a) Mr. Crain "offer[s] no analysis to corroborate" his opinions about how last accessed dates operate, and (b) his opinions regarding last accessed dates are "indisputably contrary to the record and this [sic] not reliable." Dkt. No. 429 at 4-5. Both arguments mischaracterize the factual record and are—at best—grounds for cross-examination rather than preclusion.

I.  **ARGUMENT**

   A.  **The Court should not exclude Mr. Crain's opinions regarding last accessed dates based on Mr. Crain's purportedly insufficient experience or testing.**

Mr. Crain has worked as a computer forensics investigator and expert for nearly twenty years. Musinipally Decl., Ex. B, ¶ 10. Last accessed dates are "common artifacts" that Mr. Crain often uses for determining when a computer user most recently interacted with a file on a Mac computer. Musinipally Decl., Ex. C at 65:20-67:2. Based on his expertise and experience, Mr. Crain is more than qualified to offer opinions regarding how last accessed dates behave. *See U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768, 771 (N.D. Ill. 2009) (accepting qualifications of expert who "taught courses on computer forensics, personally conducted more than 100 computer forensic investigations, testified as a computer forensic expert in both state and federal courts, and worked on trade secret matters for Fortune 500 companies").

In arguing that Mr. Crain "offer[ed] no analysis to corroborate" his opinions regarding how last accessed date artifacts behave, Dkt. No. 429 at 5, Medidata misrepresents Mr. Crain's testimony. Surprisingly, the deposition transcript pages Medidata cites (transcript pages 153-164)

2

are omitted from the transcript excerpts that Medidata appended to its motion (*see* Dkt. No. 433-3, ending on transcript page 149). The missing transcript pages, which Veeva attaches here, show that Mr. Crain has observed last accessed dates in numerous settings over his career and tested their behavior extensively to support his opinion that any user interaction with a file using a Mac will update its last accessed date. *See, e.g.*, Musinipally Decl., Ex. C at 152:20-154:7, ("[W]e specifically tested ***opening***, ***copying***, and ***attaching to an e-mail*** from our test QNAP using a Mac."); *see also id.* at 156:14-22, 157:10-16, 158:18-159:2, 161:23-162:17.

Medidata emphasizes that Mr. Crain did not test how last accessed dates behave in several highly specific situations. Dkt. No. 429 at 4-5. But the transcript pages Medidata cites (again, omitted from Medidata's exhibits) shows that each "untested" situation either (a) involves using a "*Windows-based laptop*," which Mr. Crain did not test because "*Mr. Tsai [was] using Macs*" during the 2016-2017 time period (Musinipally Decl., Ex. C at 153:23-154:7), or (b) is closely related to a situation that Mr. Crain has tested or observed previously.[2]

In sum, Medidata's quibbling over the extent of Mr. Crain's experience testing and observing last accessed dates falls far short of a basis to exclude his opinions. *See Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 228 (N.D.N.Y. 1994) (expert's failure "to perform some 'essential' tests or measurements will go to the weight of his testimony, not its admissibility").

### B. The Court should not exclude Mr. Crain's opinions regarding last accessed dates based on evidence regarding how and when Mr. Tsai transferred Medidata files to his QNAP NAS.

The Court should reject out of hand Medidata's argument that evidence regarding how and when Mr. Tsai initially transferred his retained Medidata files to his QNAP NAS device is

---

[2] For example: Mr. Crain hasn't personally tested whether "copying a file using the terminal command line" would update the last accessed date, but he has used the "command [line] to pull the file's properties, and that will update its last accessed date." *Id.* at 164:8-17.

inconsistent with Mr. Crain's opinion regarding how last accessed dates behave. Even where an expert allegedly "ignored evidence that would have required him to substantially change his opinion, that is a fit subject for cross-examination, not a ground for wholesale rejection of an expert opinion." *Davids v. Novartis Pharms. Corp.*, 857 F. Supp. 2d 267, 279 (E.D.N.Y. 2012).

In any event, Medidata's argument does not withstand scrutiny. Medidata claims there is an irreconcilable discrepancy between (a) the fact that the last accessed dates on most of the Medidata files on the QNAP NAS are April 17, 2011; (b) Mr. Crain's opinion that *any* interaction between Mr. Tsai and a Medidata file (including, presumably, the initial transfer of that file to the QNAP NAS) would update the file's last accessed date; and (c) Medidata's claim that "Tsai *could not have* copied the Medidata documents . . . to the QNAP NAS in April 2011." Dkt. No. 429 at 3. Medidata bases its timeline of Mr. Tsai's transfer activity on his testimony that he "*believe[s]*" the transfer took place in 2012 (Dkt. No. 433-5 at 137:6-9), and on a document Medidata showed Mr. Crain at deposition—what appears to be a September 2011 press release from QNAP announcing the release of the versions of the NAS device owned by Mr. Tsai and that, according to Medidata, *must* therefore mean that Mr. Tsai acquired the QNAP NAS *after* September 2011. Dkt. No. 429 at 3. Medidata concludes based on this supposed discrepancy that the Medidata files' last accessed dates *must* not behave as Mr. Crain posits and therefore "cannot be used to determine when Tsai last accessed" the files in the MDSOL folder. *Id.* at 4.

Medidata's argument falls apart because it ignores at least *two* alternative explanations for the April 17, 2011 last accessed dates that are entirely consistent with Mr. Crain's opinions— both of which Mr. Crain discussed at length at his deposition. The first is that Mr. Tsai may have transferred the Medidata files to the QNAP NAS device in 2012 using a device and/or copying

4

method that, unlike the Mac computers he was using in the 2016-2017 time period, did *not* alter last accessed dates. Musinipally Decl., Ex. C at 97:20-100:7; 138:3-143:6; Ex. D at 145:21-146:9. The second is that Mr. Tsai *did* copy the Medidata files to the QNAP NAS in April 2011. Mr. Tsai was not certain about the timing at his deposition. *See* Dkt. No. 433-5 at 137:6-9 ("*I don't recall the exact date* . . . . I *believe* it was in – sometime in 2012."). And Medidata's "a-ha!" document—an unauthenticated press release—does not establish when Mr. Tsai might have acquired his QNAP NAS. In short, Medidata's theory about when Mr. Tsai transferred Medidata files to the QNAP NAS is just that—a theory—and Mr. Crain's alleged failure to consider information that "might have affected his opinions . . . is an issue best addressed by cross-examination." *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 461 F. Supp. 2d 271, 279 (D.N.J. 2006).

    **C.**    **The Court should not exclude any of Mr. Crain's opinions that Medidata's motion did not address.**

Medidata appears to seek preclusion of *all* of Mr. Crain's disclosed opinions (*see* Dkt. No. 429 at 3 n.2), but Mr. Crain has disclosed important opinions that Medidata never mentions. For example, Mr. Crain's critique of Mr. Ackert's ▬▬▬▬▬ is independent from Mr. Crain's own opinion regarding last *accessed* dates. Musinipally Decl., Ex. B, ¶¶ 48-51. Medidata's motion does not mention Mr. Ackert's ▬▬▬▬▬ or Mr. Crain's rebuttal of it, and therefore offers no basis for excluding Mr. Crain's testimony in its entirety.

Medidata also asks the Court to preclude any "undisclosed analysis" from Mr. Crain. Dkt. No. 429 at 5. This is a thinly disguised request for an abstract "obey-the-law" order with respect to Rule 26(a)(2) and should be rejected outright. But regardless, and to remove any ambiguity, Mr. Crain will not offer any new opinions that have not already been disclosed.

For the reasons above, the Court should deny Medidata's Motion *in Limine* No. 3.

KEKER, VAN NEST & PETERS LLP

Dated: April 1, 2021

By:   /s/ *Khari J. Tillery*
      CHRISTA ANDERSON (*pro hac vice*)
      KHARI J. TILLERY (*pro hac vice*)
      REID P. MULLEN (*pro hac vice*)
      BEN D. ROTHSTEIN (*pro hac vice*)
      MOLLY C. VILLAGRA (*pro hac vice*)
      DIVYA MUSINIPALLY (*pro hac vice*)
      Keker, Van Nest & Peters LLP
      633 Battery Street
      San Francisco, CA 94111-1809
      Telephone: 415.391.5400
      Facsimile: 415.397.7188
      canderson@keker.com
      ktillery@keker.com
      rmullen@keker.com
      brothstein@keker.com
      mvillagra@keker.com
      dmusinipally@keker.com

      KEVIN J. BRUNO
      ANDREW T. HAMBELTON
      Blank Rome LLP
      The Chrysler Building
      405 Lexington Avenue
      New York, NY 10174-0208
      Telephone: 212.885.5000
      Facsimile: 212.885.5001
      kbruno@blankrome.com
      ahambelton@blankrome.com

      *Attorneys for Defendant*
      *VEEVA SYSTEMS INC.*