UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MEDIDATA SOLUTIONS, INC. et al.,                :
                             Plaintiffs,      :
                                       :
            -against-                              :       17 Civ. 589 (LGS)
                                       :
VEEVA SYSTEMS, INC.,                            :       OPINION & ORDER
                             Defendant.       :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Defendant Veeva Systems, Inc. ("Veeva") moves *in limine* to preclude the expert report of David Hall (the "Hall Report") ("Veeva MIL 5"). Plaintiffs Medidata Solutions, Inc. and MSDOL Europe Limited (collectively, "Medidata") oppose and request leave to update the Hall Report in response to the Opinion and Order on summary judgment ("Summary Judgment Opinion"), which eliminated certain classes of trade secrets that Medidata did not sufficiently describe. For the reasons set forth below, the motion is granted in part and denied in part.

I.    BACKGROUND

   Familiarity with the underlying allegations and procedural history is assumed. The Hall Report defines three broad classes of trade secrets:

- The "product development" trade secrets, defined as those related to Medidata's "clinical trial software solutions, including software architecture and design; product readiness status, development timelines, and roadmaps; functionality requirements; unannounced product features; the comparative strengths and weaknesses or limitations of the features, functionality and implementation of Medidata's software solutions; Medidata's plans, projects and product mock-ups designed to implement new features and functionalities; platform integration; and platform design concepts and planned changes to its platform design."

- The "sales and marketing" trade secrets, defined as those "related to sales, marketing and customer-specific information, including Medidata's client solutions footprint, pipeline of opportunities, and individual pricing proposals."

- The "business plans and strategies" trade secrets, defined as those "including go-to-market plans and strategies, business analysis and planning, sales quotas by customer and

by salesperson, and cross-functional plans and organization-wide strategies."

Medidata's alleged trade secrets were also vaguely defined on summary judgment, falling into sixteen, rather than three, broad categories.  Relying on Medidata's own descriptions of its trade secrets from discovery, the Summary Judgment Opinion concluded that six of those categories lacked adequate specificity for a jury to ascertain what Medidata claimed to be protected.  For the other ten classes of trade secrets, the Summary Judgment Opinion limited Medidata to specific items, as set forth in Appendix A to that opinion.

The Hall Report sets forth four opinions, none of which apportion specific damage amounts to misappropriation of specific trade secrets, or even to the above classes of trade secrets:

- Opinion 1 estimates the extent of Veeva's unjust enrichment by ascertaining the costs Medidata incurred to develop its EDC and CTMS products, using entries from a software development tracking database.

- Opinion 2 estimates Veeva's profits resulting from the alleged misappropriation, which are subject to disgorgement.  It notes the amount of profit that Veeva generated as of the date of the report and estimates that Veeva will generate approximately fifty times that amount in profits through 2029.

- Opinion 3 estimates Medidata's lost profits.

- Opinion 4 (1) estimates the reasonable royalty Veeva would have paid to Medidata for all of the trade secrets, using projected sales through 2029 and (2) estimates a lump-sum royalty Veeva would have paid Medidata, based on Opinion 1's determination of Veeva's costs saved through misappropriation of all of the alleged trade secrets.

Opinions 2-4 rely on the "head start" opinion of Medidata's technical expert, Jim Davies (the "Davies Report"), which estimated the time Veeva allegedly saved in developing its EDC and CTMS products by using Medidata's trade secrets.  That opinion compared Veeva's development timelines to those of similar products, including Medidata's, and suggested that the difference in product development times was attributable to Veeva's access to information that Medidata

2

regarded as proprietary and confidential.

Veeva's MIL 5 seeks to exclude the Hall Report.  Medidata opposes Veeva MIL 5 and also seeks, by separate letter, leave to update the Hall Report to (1) use the "same methodology" in light of the Summary Judgment Opinion and (2) provide new estimates based on Veeva financial data generated since the Hall Report was submitted.

## II.   STANDARD

Under the Defend Trade Secrets Act ("DTSA") and New York law, a party may only recover for misappropriation of existing trade secrets -- and thus may not recover for trade secrets no longer at issue in a case.  *See* 18 U.S.C. § 1836(b)(1); *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 310 (N.Y. 2018).

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  District courts play a "'gatekeeping' function" under Rule 702 and are "charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  A Rule 702 inquiry focuses on three issues, including as pertinent here, whether "the expert's testimony (as to a particular matter) will assist the trier of fact."  *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (internal quotation marks and citations omitted); *accord In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15 Civ. 6549, 2021 WL 509988, at *6 (S.D.N.Y. Feb. 11, 2021).

Federal Rule of Civil Procedure 26(e)(2) requires expert testimony to be supplemented "by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Federal Rule of Civil Procedure 37(c) permits a district court to sanction a party for failure to supplement an earlier disclosure.  "The imposition of sanctions under Rule 37 lies within the broad discretion of the

trial court," but "preclusion of evidence pursuant to Rule 37(c)[] is a drastic remedy and should be exercised with discretion and caution." *Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19 Civ. 2532, 2021 WL 2158017, at *3 (S.D.N.Y. May 27, 2021) (internal quotation marks and alterations omitted).

### III.   DISCUSSION

#### A. Medidata's Development Costs in Opinions 1 and 4

Veeva seeks to exclude the entirety of Opinion 1, noting that Medidata cannot recover for eliminated trade secrets but that the Hall Report's "all or nothing" approach to damages fails to apportion specific amounts to specific trade secrets. Veeva likewise seeks to exclude the portion of Opinion 4 that estimates a lump-sum royalty based on the amount of unjust enrichment calculated in Opinion 1.

The parties do not dispute that Opinion 1 of the Hall Report includes alleged damages for eliminated categories of trade secrets for which Medidata cannot recover. As this "all or nothing approach" is plainly not helpful to the trier of fact, Opinion 1 cannot be admitted in its current form. Amendment of Opinion 1, rather than exclusion, is proper, as courts permit expert reports to be modified to conform to court orders in the lead-up to trial. *See, e.g.*, *McPartlan-Hurson v. Westchester Cmty. Coll.*, No. 13 Civ. 2467, 2018 WL 5801057, at *4 (S.D.N.Y. Nov. 5, 2018) (permitting amended expert report following elimination of one claim).

In response, Veeva argues that Medidata is past the Rule 26(e)(3) deadline to supplement the Hall Report, that Medidata had ample opportunity during expert discovery to ascertain and specify Medidata's development costs for each of the specified trade secrets and that any modification would prejudice Veeva by requiring additional discovery and motion practice. Veeva asserts that such conduct is sanctionable under Rule 37(c). Throughout discovery,

Medidata refrained from cleanly specifying its trade secrets in a manner that would promote the efficient resolution of this case and conserve the resources of the parties and the Court. That practice is far from laudable but does not justify the prejudice to Medidata that would result from excluding all damages evidence for the trade secrets that survived summary judgment. Nor does it justify the "drastic remedy" of a Rule 37 sanction, given that the prejudice to Veeva is low -- trial is months away, and expert discovery may be reopened for the limited purpose of addressing any revised report. *Torres*, 2021 WL 2158017, at *3. Nevertheless, since the additional discovery appears to be the product of deliberate litigation gamesmanship, and to mitigate the prejudice to Veeva, it is appropriate to charge Medidata with a portion of the incremental cost of discovery, namely the cost of Veeva's preparing any supplemental or revised expert reports in response to a revised Hall Report, and the reasonable attorneys' fees of one lawyer occasioned by that supplemental report and related discovery.

Any modification to Opinion 1 must be of sufficient granularity that the jury can reasonably connect Medidata's proposed damages to specific categories of misappropriated trade secrets. The revised Opinion 1 must, for each of the ten classes of trade secrets identified in Appendix A to the Summary Judgment Opinion, apply the same methodology as the current Opinion 1 to estimate Medidata's development costs in connection with (1) the CTMS products and (2) the EDC products. The lump-sum royalty determination of Opinion 4 shall also be modified accordingly.

**B. Reliance on the Davies Report's Head Start Estimate in Opinions 2, 3 and 4**

Veeva claims that, like the Hall Report, the Davies Report assumed that all of the alleged trade secrets were misappropriated, and thus that Davies' estimate of Veeva's head start is too high, leading Hall's estimates in Opinions 2 through 4 likewise to be too high. An opinion and

order excluding Davies Report's head start opinion due to lack of a reliable methodology for quantifying Veeva's head start will issue separately. The estimates in Opinions 2 through 4 that are based on the Davies Report's "head start" analysis are accordingly excluded.

### C. Estimates of Veeva's Future Profits in Opinions 2 and 4

Veeva also claims that Opinions 2 (disgorgement of Veeva's profits gained through unjust enrichment) and 4 (payment of reasonable royalties) seek an impermissible remedy, to the extent they rely on estimates of Veeva's future sales and profits. The DTSA permits recovery for "actual loss" caused by trade secret misappropriation, 18 U.S.C. § 1836(b)(3)(B)(i)(I), "any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss," 18 U.S.C. § 1836(b)(3)(B)(i)(II), and "in lieu of damages measured by any other methods, damages . . . measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret," 18 U.S.C. § 1836(3)(B)(ii).

#### 1. Future Unjust Enrichment in Opinion 2

Unjust enrichment is typically an issue of state law, and "the elements of unjust enrichment are similar in every state." *Allianz Glob. Invs. Gmbh v. Bank of Am. Corp.*, No. 18 Civ. 10364, 2021 WL 3192814, at *8 n.5 (S.D.N.Y. July 28, 2021). "The essence of an unjust enrichment claim is that one party *has* received money or a benefit at the expense of another." *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259 (S.D.N.Y. 2012) (alterations omitted, emphasis in original) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). Permitting Medidata to recover for Veeva's hypothetical future profits under an unjust enrichment theory would contravene this well-established definition.

In response, Medidata cites a variety of non-binding precedent, while also noting that the

6

DTSA permits recovery for "any" unjust enrichment. That the DTSA permits recovery for any unjust enrichment is beside the point because unjust enrichment requires a benefit already conferred. Medidata does not provide, and the Court has not ascertained, any binding authority stating that the definition of "unjust enrichment" in the DTSA differs from the common law definition. The portions of Opinion 2 relating to Veeva's hypothetical future profits are excluded.

### 2. Royalties From Future Sales in Opinion 4

In trade secret cases, "[a]n infringer's projected sales are often used as a basis for a reasonable royalty when the projections would have been available at the time of the hypothetical negotiation [between parties]." *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 188-89 (S.D.N.Y. 2002). "In contrast, post-negotiation sales projections are an after-the-fact assessment that the negotiating parties could not have considered. These estimates do not reflect the parties['] perceived value of the trade secret during the negotiation. Therefore, sales projections are only relevant in a reasonable royalty calculation when they are available before the time of the misappropriation and would have been considered by the parties." *Id.* at 89.

The next question is what sales to which a reasonable royalty may be applied are presentable to the jury. While "the case law on this issue reflects a high level of confusion and inconsistency," the key "is what the parties would have believed to be the reasonable value of the alleged trade secret at the time it was stolen." *Id.* (persuasively reasoning that projected sales could be used to determine recoverable amount if they were known prior to the alleged misappropriation, because those projections would have governed the parties' negotiations). The Hall Report relies on post-hoc projections of Veeva's sales of the EDC and CTMS products through 2029, and the parties offer no evidence that these projections were available to the parties at the time of a hypothetical royalty negotiation, either for use in determining a reasonable royalty

rate or for determining to which sales that royalty would be applied.  Consequently, the portions of Opinion 4 relating to hypothetical royalties on Veeva's projected future sales are excluded.

In response, Medidata claims that the relevant language of the DTSA, 18 U.S.C. § 1836(b)(3)(B)(ii), is not time-limited, but simply refers to "a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret."  This argument is unconvincing.  First, the DTSA does not define reasonable royalty and is silent on whether future sales are included in the reasonable royalty analysis, while at least one court in this District has (1) persuasively reasoned that post-negotiation sales projections are of little use and (2) hesitated to present to the jury post-hoc determinations of actual sales -- much less hypothetical future sales.  *LinkCo.*, 232 F. Supp. 2d at 189-90; *see also Victor G. Reiling Assocs. v. Fisher-Price, Inc.*, No. 3: Civ. 222, 2006 WL 1102754, at *2 (D. Conn. Apr. 25, 2006) (holding that reasonable royalties for trade secret misappropriation are compensatory damages designed to remedy any proved misappropriation that has already occurred).  Second, reading Section (B)(ii) to preclude recovery for projected future sales is consistent with the other relief provision of the DTSA governing royalties, 18 U.S.C. § 1836(b)(3)(A), which governs injunctive relief for DTSA violations.  Sub-section (A)(iii) states that, "in exceptional circumstances that render an injunction inequitable," a court may issue a specific injunction "that conditions future use of the trade secret upon payment of a reasonable royalty for no longer than the period of time for which such use could have been prohibited."  Permitting royalties on any future sales pursuant to Section (B)(ii) would void this specific carve-out for injunctive relief, which permits royalties on future sales only in "exceptional circumstances" that render normal injunctive relief barring future use of a trade secret unavailable.  Medidata offers no exceptional circumstances that would justify a royalty payment on future sales in lieu of standard injunctive relief.

### IV.     CONCLUSION

For the reasons stated above, Veeva's request to limit the Hall Report by excluding future profit calculations from Opinions 2 and 4 is GRANTED. The portions of the Hall Report estimating damages based on the Davies Report's head start opinion are excluded. Veeva MIL 5 is otherwise DENIED. Medidata's request to supplement the Hall Report is GRANTED. Any revised Hall Report shall comply with the directives of this Opinion and Order. Medidata shall pay Veeva the cost of Veeva's obtaining any supplemental responsive report, and the reasonable attorneys' fees of one lawyer occasioned by the supplemental reports and related discovery. By September 8, 2021, the parties shall meet and confer and file a proposed plan regarding (1) submission of a revised Hall Report, (2) any responsive report by Veeva, as well as discovery or motion practice in connection with these revised or supplemental reports and (3) the payment of Veeva's costs and fees as set forth above.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 430 and 625.

Dated:  August 25, 2021
           New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**