UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MEDIDATA SOLUTIONS, INC. et al., :
                              Plaintiffs, :
                                                :
              -against- : 17 Civ. 589 (LGS)
                                              :
VEEVA SYSTEMS, INC., : **OPINION & ORDER**
                                Defendant. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Defendant Veeva Systems, Inc. ("Veeva") moves *in limine* to preclude portions of the expert opinion of Jim Davies (the "Davies Report") estimating the product development time Veeva saved through its alleged misappropriation of Medidata's trade secrets ("Veeva MIL 4"). Plaintiffs Medidata Solutions, Inc. and MSDOL Europe Limited (collectively, "Medidata") oppose and request leave to update the Davies Report in response to the Opinion and Order on summary judgment ("Summary Judgment Opinion"), which eliminated certain classes of trade secrets that Medidata did not sufficiently describe. For the reasons set forth below, Veeva MIL 4 is granted.

**I.    BACKGROUND**

      Familiarity with the underlying allegations and procedural history is assumed. As relevant to the present motion, the Davies Report (1) opines as to typical software development timelines for CTMS and EDC products and (2) concludes that because Veeva developed its CTMS and EDC products faster than those timelines, it must have used Medidata's trade secrets to gain a "head start."[1]

**II.    STANDARD**

      Federal Rule of Evidence 702 governs the admissibility of expert testimony. District

---

[1] The Davies Report also details what classes of trade secrets were allegedly misappropriated by Veeva, how they were valuable and how Medidata protected them. Veeva does not challenge those portions of the report.

courts play a "'gatekeeping' function" under Rule 702 and are "charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). A Rule 702 inquiry focuses on three issues: (1) whether a witness is qualified as an expert, (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (internal quotation marks and citations omitted); *accord In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15 Civ. 6549, 2021 WL 509988, at *6 (S.D.N.Y. Feb. 11, 2021).

### III. DISCUSSION

#### A. The Head Start Opinion

The Davies Report identifies a number of instances in which former Medidata employees who worked for Veeva were aware of trade secrets developed by Medidata. The Davies Report identifies a much smaller number of instances in which former Medidata employees allegedly used such documentation or information at Veeva.

After cataloging the large amount of Medidata information to which Veeva allegedly had access, along with the smaller set of specific instances in which Veeva allegedly used specific portions of that information, the Davies Report repeatedly claims that Veeva gained a competitive advantage:

- "[A] competitor with access to Medidata's principles, architectures, and strategies would be able to accelerate its development cycle and introduce a competing product faster than it otherwise would have been able."

- "[U]nauthorized access to Medidata's product development implementation information would provide a blueprint for developing an EDC product from its earliest

stages to a fully featured offering."

- "[T]he documents and testimony I have reviewed indicate that Veeva's development process leading to the release of its EDC product was guided and influenced by information developed by Medidata."

- Veeva's access to Medidata's proprietary and confidential information concerning [certain generic product features] would in my opinion benefit Veeva by (a) allowing Veeva to implement its core EDC features in an extensible way, thus speeding the later implementation of new features . . . and (b) avoiding time potentially wasted due to redesigning core EDC features to accommodate the introduction of new features in future releases . . . [and permitting Veeva] to introduce more robust and feature-rich initial releases above and beyond what would be expected from a software development company with the relative inexperience regarding EDC.

- "Veeva had access to and referred to information that Medidata regarded as proprietary and confidential which reflected a full spectrum of EDC development."

- "Based upon my own experience of software design and development, the advanced functionality of [Veeva's CTMS product] would typically require at least [redacted] months of development time in the absence of access to preexisting development information of the kind provided by [various Medidata employees.]"

The observation that Veeva's access to and use of Medidata's confidential product development information could lead Veeva to develop a competing product more quickly is well within the comprehension of the jury, and expert testimony on that point is warranted only to the extent that it explains *how* specific instances of alleged misappropriation would have reduced Veeva's development timelines.

The Davies Report does not provide any methodology for ascertaining *how much* time Veeva saved through its alleged use of each identified class of trade secret. Instead, it notes the difference between Veeva's development timelines and various comparable products and concludes that "Veeva's access to, and use of, such Medidata information allowed Veeva to substantially accelerate its timeline for developing its EDC and CTMS products." The plain import of the Davies Report is that Veeva saved a specific amount of time due to its alleged

3

misappropriation, and that the amount of time saved equals the difference between the time it took competitors to develop similar products and Veeva's development time.  The Davies Report provides no sound methodological basis for that conclusion, but instead relies on its expert's bare say-so coupled with observations of development timelines for similar products.  Introducing expert opinion on Veeva's alleged head start, without any demonstrated or reliable method for determining the specific degree of head start provided by each alleged use of specific Medidata trade secrets, would not assist the jury.  To the contrary, there is a significant risk that the jury would give undue weight to expert opinion shorn of any demonstrable, reliable methodology.[2]

In response, Medidata argues that questions regarding the Davies Report's head start opinion go to the weight to be given Davies' methodology, not its admissibility.  This argument is unpersuasive, as the Davies Report articulates no method by which to quantify Veeva's alleged head start.  Medidata also suggests that Davies articulated a methodology by "appl[ying] his expertise to the product development information available in the case" to "available evidence of comparable development efforts to confirm his calculations as to credible development timelines for EDC and CTMS products," for instance, by evaluating development entries in Medidata and Veeva's software development project databases for EDC and CTMS products.  This argument is unpersuasive, as it, like the Davies Report, does not explain how Davies determined how Veeva's alleged use of certain trade secrets led to specific time savings.

---

[2] In his deposition, Davies retreated from stating that his report wholly attributed the time differences to trade secret misappropriation.  To the extent Medidata argues that the Davies Report simply introduces the differences in development times for the jury to weigh, that argument is unpersuasive, as the plain import of the introduction of such information is that the difference is due to trade secret misappropriation.  The Davies Report provides no reliable method for determining the extent to which the difference arises from such misappropriation.

### B. Development Timelines for Comparable Products

The Davies Report purports to estimate typical development timelines for EDC and CTMS products. For EDC, it relies on development timelines for two products -- Medidata's EDC product and a separate EDC product known as OpenClinica. For CTMS, it relies solely on the development timeline for a CTMS product created by Clinical Force, which Medidata acquired in 2011. Veeva takes issue with these estimates, claiming that Davies (1) lacks general knowledge of EDC and CTMS products, (2) lacks specific knowledge of the EDC and CTMS products he used for comparison and (3) unduly relies on his general experience with EDC and CTMS products. These objections would normally go to the weight to be accorded the Davies Report, rather than its admissibility, as Davies undisputedly has experience in the development of CTMS and EDC products -- a field of software with only approximately eighteen market competitors worldwide, where proprietary development timelines will not be readily available (evidenced in part by the parties' efforts to maintain confidential their own development timelines in this case). However, because the Davies Report uses these timelines only in support of the head start opinion for which it articulates no reliable methodology, these development timelines are likewise not admissible.

### IV. CONCLUSION

For the reasons stated above, Veeva's MIL 4 is **granted**. Medidata's motion for leave to update the Davies Report to conform to the Summary Judgment Opinion is **denied** as moot. For the avoidance of doubt, at trial, Medidata shall not introduce: (1) Davies' opinion that the difference in development time between Veeva's products and the comparable products analyzed by Davies is attributable to Veeva's alleged misappropriation of trade secrets or (2) evidence of the development timelines for the other EDC and CTMS products set forth in the Davies Report,

as the report only uses those timelines in an attempt to quantify Veeva's alleged head start. Any testimony by Davies regarding resources saved by Veeva through alleged misappropriation of Medidata's trade secrets shall be limited to an explanation of how such misappropriation would have assisted Veeva. The Clerk of Court is respectfully directed to close the entries at Docket Numbers 417 and 421.

Dated:  August 25, 2021
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**