UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MEDIDATA SOLUTIONS, INC. et al.,                  :
                            Plaintiffs,      :
                                    :
            -against-                     :    17 Civ. 589 (LGS)
                                    :
VEEVA SYSTEMS, INC.,                              :    OPINION & ORDER
                            Defendant.       :
------------------------------------------------------------ X
LORNA G. SCHOFIELD, District Judge:

       Plaintiffs Medidata Solutions, Inc. and MSDOL Europe Limited "move for an adverse inference against Defendant Veeva Systems, Inc. ("Veeva"), claiming that Veeva spoliated evidence by failing to prevent one of its employees, Anthony Tsai ("Tsai") from deleting data showing his creation, modification, access or deletion of certain files allegedly embodying Plaintiffs' trade secrets (the "File Metadata"). For the reasons set forth below, the motion is denied.

**I.    BACKGROUND**

       Plaintiffs and Veeva sell software for clinical trials. In January 2017, Plaintiffs filed this action against Veeva, alleging misappropriation of trade secrets related to and embodied in its Electronic Data Capture ("EDC") and Clinical Trial Management System ("CTMS") products, as well as associated trade secrets related to business planning, marketing and sale of the EDC and CTMS products. Plaintiffs primarily allege that five of their former employees who were hired by Veeva used Plaintiff's trade secrets to develop Veeva's competing EDC and CTMS products.

       Tsai is a sales engineer who worked for Plaintiffs and then was involved in developing Veeva's EDC and CTMS products. Tsai left Plaintiffs' employ in April 2011, approximately five years and eight months before Plaintiffs commenced this action. He is not one of the five employees whose activities are the focus of Plaintiffs' Second Amended Complaint but is mentioned in a footnote as one of eleven "lower-level" employees of Plaintiffs who were hired by

Veeva.

Shortly after Plaintiffs commenced this action, Veeva issued a companywide litigation hold for various electronic and document management systems, including employee email accounts, computers, shared drives and corporate databases. This hold applied to Tsai.

In its discovery responses, Veeva stated that it had not searched for items within the personal possession, custody or control of its employees. Plaintiffs did not object or move to compel production of such documentation, including with respect to Tsai, but instead likewise declined to produce information in its employees' personal possession. Nor did Plaintiffs identify Tsai as a key custodian of Electronically Stored Information ("ESI") under the Court's Individual Rules.

In July 2019, Veeva questioned Tsai following submission of the expert report of Plaintiffs' expert, Jim Davies and learned that Tsai had retained hundreds of thousands of Plaintiffs' documents (the "Retained Files") on a personal networked storage hard drive maintained on his home computer network (the "D-Link Drive"). Veeva immediately orally directed Tsai to hold the Retained Documents and alerted Plaintiffs, and the D-Link Drive was delivered to an e-discovery service provider retained by the parties.[1] Approximately one month

---

[1] Plaintiffs filed a letter motion to strike these statements by Veeva, claiming that Veeva cited attorney-client privilege in refusing to reveal (1) the contents of Veeva's interviews with Tsai regarding the Retained Documents and (2) the nature of the oral litigation hold Veeva issued upon learning of the Retained Documents. Plaintiffs claim that Veeva is now revealing those privileged communications in its moving papers, despite withholding them in discovery. Veeva is not relying on privileged information, much less privileged information from Tsai, regarding the specifics of these interactions in its submissions on this motion; rather, Veeva has merely stated that it learned that Tsai had the Retained Documents and told him to hold them. Veeva is thus not using the attorney-client privilege "as both a shield and a sword*," Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18 Civ. 4921, 2021 WL 1930294, at *3 (S.D.N.Y. May 13, 2021),

later, Veeva learned that (1) Tsai had also copied the files from the D-Link drive to another drive on his home network (the "QNAP Drive"), (2) had moved files from that drive to a Sandisk USB drive ("USB Drive") for transmission to an electronic discovery vendor and then (3) reset the operating system of his personal iMac computer (the "iMac") -- one of three computers he had used to access files on the QNAP Drive, with the other two being work laptops.  Plaintiffs obtained forensic data from the D-Link Drive, the QNAP Drive, the USB Drive, the iMac and Tsai's two work laptops.  That analysis suggested that: (1) Tsai copied files onto the D-Link Drive in the three weeks before his departure from Plaintiffs; (2) Tsai used Veeva laptops to access the Retained Files on the QNAP Drive from 2015 to 2017, the period when Veeva's CTMS and EDC products were under development; (3) File Metadata for files and folders on the QNAP Drive were lost when Tsai transferred those files to the USB Drive and (4) when Tsai reset the iMac, File Metadata on the iMac showing what files Tsai created, accessed or modified on the QNAP Drive via the iMac were lost, along with File Metadata showing the dates and times of access.

When Tsai was deposed in November 2019, he stated that he: (1) kept the Retained Documents after leaving the company in 2011; (2) copied the Retained Documents from the QNAP Drive to the USB Drive in order to provide that information to the parties' e-discovery vendor and (3) subsequently deleted the Retained Documents from the QNAP Drive without any instruction from either party.

Following the close of discovery, Plaintiffs moved for sanctions, claiming that Veeva

---

as Plaintiffs claim, and Veeva's statements need not be stricken from the record.

failed to ensure that the File Metadata was fully preserved. The motion was adjourned until after the parties' summary judgment motions were resolved. The parties re-briefed this issue following summary judgment, and it is now ripe.

## II.    STANDARD

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Watkins v. New York City Transit Auth.*, No. 16 Civ., 2018 WL 895624, at *9 (S.D.N.Y. Feb. 13, 2018) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 148 (2d Cir. 2008)). Under Federal Rule of Civil Procedure 37(e):

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(1)-(2). "In situations where sanctions are warranted, district courts have broad discretion in 'crafting an appropriate sanction for spoliation.'" *Raymond v. City of New York*, No. 15 Civ. 6885, 2020 WL 7055572, at *7 (S.D.N.Y. Dec. 2, 2020) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "The Advisory Committee

Notes on section (e)(2) of the new Rule make clear that the new Rule 37 rejects cases . . . that authorize the giving of adverse-inference instructions on a finding of mere negligence." *Watkins*, 2018 WL 895624, at *10 (internal quotation marks omitted). "[L]itigants in the Second Circuit seeking [sanctions under Rule 37(e)(2)] now have the burden of proving 'intent to deprive,' rather than ordinary or gross negligence." *Id.* (quoting Fed. R. Civ. P. 37(e)(2)). "The burden is on the moving party to prove the elements of a spoliation claim by a preponderance of the evidence." *Jacquety v. Baptista*, No. 19 Civ. 9642, 2021 WL 1885263, at *10 (S.D.N.Y. May 11, 2021).

### III. DISCUSSION

Plaintiffs have not shown by a preponderance of the evidence that Veeva acted with the intent to deprive Plaintiffs of the File Metadata, as they must to justify the sanction of an adverse inference. Fed. R. Civ. P. 37(e)(2). Plaintiffs' arguments on this point rest on three observations: (1) that Tsai was involved in development of Veeva's CTMS and EDC products, and he used certain Retained Documents allegedly embodying unspecified trade secrets during that period; (2) that Tsai deleted Plaintiffs' files from the QNAP Drive after transferring them to the USB Drive and (3) that Tsai reset his personal iMac, thus preventing recovery of File Metadata on that device and preventing Plaintiffs from knowing the true extent to which Tsai accessed the Retained Files. From these facts, Plaintiffs infer that Veeva, through some unspecified communication with Tsai, directed him to take these actions. That inference is not supported by the evidence Plaintiffs offer. First, Plaintiffs do not dispute that Veeva undertook numerous efforts, including general and individualized litigation holds and prompt notification to Plaintiffs, to preserve the Retained Documents and File Metadata. Second, Plaintiffs do not dispute that the alleged acts of spoliation took place after Veeva (1) learned of the Retained Documents, (2) immediately

5

directed Tsai to preserve them and (3) immediately notified Plaintiffs. Third, Plaintiffs offer no evidence suggesting that Tsai was acting at Veeva's direction when he copied the Retained Documents to the USB Drive and deleted them from the QNAP Drive, or when he reset his personal iMac. To the contrary, Tsai testified that he transferred and deleted the files on his own initiative, without direction from any party. Although the record is silent on why Tsai reset his iMac, nothing suggests that Veeva told him to do so. Plaintiffs' evidence is too tenuous to find it more likely than not that Veeva took any action with respect to the File Metadata other than preservation, much less that Veeva acted with the intent to deprive Plaintiffs of that information. An adverse inference is unwarranted.[2]

In response, Plaintiffs first argue that, from the outset, Veeva should have identified Tsai as a potential custodian of Retained Documents and inventoried his personal devices. This argument is unconvincing, as Veeva did issue a litigation hold for Tsai, and all other Veeva employees, at the outset of the case, when neither party (1) had any inkling of the Retained Documents and (2) did not search employees' personal devices for discoverable information.

---

[2] Plaintiffs' motion fails for the additional reason that they do not meet their burden to show prejudice by a preponderance of the evidence. *See* Fed. R. Civ. P. 37(e)(1). Plaintiffs repeatedly cite instances in which forensic evidence shows Tsai accessing folders containing Retained Documents. Plaintiffs then recite the number of documents contained in those folders (usually numbering in the hundreds, thousands or tens of thousands) without stating what specific trade secrets were embodied in specific Retained Documents in those folders. Plaintiffs then conclude that the lost File Metadata "would have shown acts of misappropriation by Veeva." Such generalized references to instances when Tsai accessed folders on his personal drives do not suffice to show prejudice by a preponderance of the evidence, because (1) it is not clear what allegedly-misappropriated trade secrets are at issue; (2) even if it were, File Metadata showing Tsai's access to the Retained Documents was preserved from many devices -- the D-Link Drive, the QNAP Drive, the USB Drive and Tsai's two work laptops and (3) Plaintiffs identify only a small number of instances in which specific Retained Documents were allegedly disclosed to and used by Veeva.

Only following submission of Plaintiffs' expert report and the completion of various depositions referencing Tsai's emails did Veeva further investigate Tsai, at which point it (1) learned of the Retained Documents and (2) took prompt action to preserve them, as well as the associated File Metadata.  Viewed without the benefit of hindsight, Veeva's actions are consistent with the normal discovery process in complex civil litigation, in which general document holds are imposed on party employees, and then a huge number of attorney hours are expended reviewing millions of documents from dozens of custodians.  Veeva's conduct was reasonable and consistent with its discovery obligations, and does not show negligence, much less any intent to deprive Plaintiffs of discoverable information.  *See Watkins*, 2018 WL 895624, at *10.

        Second, Plaintiffs argue that they were entitled to information retained on Tsai's personal drives and iMac, as "Courts have repeatedly found that employers have control over their employees and can be required to produce documents in their employees' possession."  That is true but beside the point as neither party asked their employees to search their personal devices for ESI in the ordinary course, objected to that practice, or moved to compel production of such information during discovery.  Plaintiffs ignore that as soon as Veeva had any indication that Tsai held the Retained Documents, Veeva took immediate action to preserve those documents and alert Plaintiffs.  The result is that many details of specific instances when Tsai accessed the Retained Documents were recovered.  That some details were not, due to Tsai's actions, does not create an inference that Veeva worked to deprive Plaintiffs of relevant information.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for an adverse inference is **denied**. Plaintiff's motion to strike is **denied**. The Clerk of Court is respectfully directed to close the docket entries at 600, 627 and 628.

Dated:  September 22, 2021
       New York, New York

                                             **LORNA G. SCHOFIELD**
                                          **UNITED STATES DISTRICT JUDGE**