UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MEDIDATA SOLUTIONS, INC. et al.,             :
                             Plaintiffs,    :
                                      :
             -against-                        :        17 Civ. 589 (LGS)
                                      :
VEEVA SYSTEMS, INC.,                         :        OPINION & ORDER
                             Defendant.    :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Medidata moves *in limine* to preclude portions of the opinion of Veeva's rebuttal forensic expert, Andrew Crain (the "Crain Report") on the basis that he does not base his opinions on any reliable methodology ("Medidata MIL 3"). Veeva opposes. For the reasons set forth below, Medidata MIL 3 is denied.

I.    BACKGROUND

       Familiarity with the underlying allegations and procedural history is assumed. In 2011, former Medidata employee Anthony Tsai retained approximately 200,000 Medidata files and folders (the "Retained Files") on personal networked hard drives (the "D-Link" and "QNAP" drives). Medidata's forensic expert, Julian Ackert, submitted an analysis (the "Ackert Report") concluding that: (1) Tsai copied files onto the D-Link drive in the three weeks before his departure from Medidata; (2) Tsai later copied many of those files, including approximately 122,000 files in a folder titled "MDSOL," to the QNAP drive; (3) Tsai accessed the Retained Files on the QNAP drive from 2015 to 2017 (the period when Veeva's CTMS and EDC products were under development) using two work Mac laptops and a personal iMac; (4) data showing Tsai's creation, modification, access or deletion of the Retained Files ("File Metadata") on the QNAP drive was lost when Tsai transferred those files to the USB Drive and deleted them from the QNAP drive; and (5) when Tsai reset the iMac, File Metadata on the iMac showing what files Tsai created, accessed or modified on the QNAP Drive via the iMac were lost, along with File

Metadata showing the dates and times of access. To substantiate Tsai's access to specific files and folders, the Ackert Report relies in large part on File Metadata showing the dates files were last modified, which the Ackert Report treats as evidence that Tsai viewed a file or folder.

Veeva submitted the Crain Report to rebut the Ackert Report. The Crain Report opines that the "last modified" dates on all files in a folder may have been updated simply because Tsai opened that folder, even if he did not access a file in the folder. The Crain Report substantiates Tsai's access to specific files via File Metadata showing the dates that those files were last accessed. The Crain Report claims that when the drives holding the Retained Documents were accessed using Mac computers, such "last accessed" dates would have updated on a file specific basis when Tsai opened, copied, attached to emails or otherwise interacted with individual files. Neither party disputes that Tsai only used Mac computers to access the drives, and the Crain Report assumes that Tsai accessed those drives using Mac computers.

The Crain Report analyzes File Metadata for the MDSOL folder on the USB drive, which it treats as a representation of the files on the QNAP drive before Tsai (1) copied the MDSOL folder to the USB drive and (2) deleted it from the QNAP drive. The Crain Report notes that the File Metadata for the MSDOL folder on the USB drive shows dates of last access after April 15, 2011 -- the day Tsai departed Medidata -- for only 1,460 of the approximately 122,000 Retained Files in that folder. The Crain Report states that "[a]ny interaction with these documents by Mr. Tsai while at Veeva (e.g., opening, copying, or emailing them) would necessarily have updated their last accessed dates."

At the same time, the Crain Report opines that Tsai copied the MDSOL folder from the D-Link drive to the QNAP drive on April 17, 2011, because (1) the vast majority of documents on the D-Link drive have April 17, 2011, as their last-accessed date and (2) April 17, 2011, is the

2

earliest last-accessed date on that drive. The Crain Report states that "This last accessed date value would have been updated by Mr. Tsai's copy process, assuming he used a Mac computer to perform the copy from the D-Link [drive] to the QNAP [drive]."

The Crain Report thus states that (1) the MDSOL folder on the USB drive contains "last accessed" dates before April 15, 2011, for all but 1,460 of the more than 122,000 documents therein but (2) the "vast majority" of documents in the MDSOL folder on the D-Link drive have a "last accessed" date of April 17, 2011. The Crain Report does not explain why the last-accessed dates for all 122,282 of the files in the MDSOL folder were not updated each time they were copied, from the D Link drive to the QNAP drive, and again from the QNAP drive to the USB drive. The Crain Report instead states that "if Mr. Tsai interacted with one of the documents on the QNAP or D-Link devices in any way (e.g., by opening it, viewing its contents, copying it to other locations, or attaching it to an email message) the last accessed value for that document would necessarily have been updated to the date he did so."

Finally, Tsai testified that he recalled copying the MDSOL folder from the D-Link drive to the QNAP drive in 2012. Medidata has introduced a press release from QNAP Systems announcing the release of the model of QNAP drive used by Tsai. That press release is dated September 27, 2011, after the April 17, 2011, copying date set forth by the Crain Report.

## II.   STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. District courts play a "'gatekeeping' function" under Rule 702 and are "charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). A Rule

3

702 inquiry focuses on three issues: (1) whether a witness is qualified as an expert, (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (internal quotation marks and citations omitted); *accord In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 543 (S.D.N.Y. 2021).

### III. DISCUSSION

Medidata contends that the Crain Report's opinions as to last-accessed dates should be excluded as unreliable because the report bases its assertion that copying necessarily updates "last accessed" dates on its assumption of "a fact that is indisputably contrary to the record" -- that Tsai copied the MDSOL folder from the D-Link drive to the QNAP drive in April 2011, five months before the QNAP drive was released. The Crain Report contains facial inconsistencies that call into question the accuracy of a "last accessed" date as a method of evaluating file access. The press release reinforces those inconsistencies. But those inconsistencies, which a factfinder can readily comprehend, ultimately go to the weight to be accorded Crain's analysis, not its admissibility. *See S.E.C. v. Razmilovic*, 738 F.3d 14, 35 (2d Cir. 2013), *as amended* (Nov. 26, 2013) ("perceived gaps, inconsistencies, or errors in the reasoning leading to an expert's opinion are matters that properly go to the weight of the evidence"); *accord Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 311 F. Supp. 3d 653, 659 (S.D.N.Y. 2018).

Medidata also claims Crain did not fully test the behavior of "last accessed" dates in a variety of situations involving access from non-Mac computers. The Crain Report states that he did not do so because the analysis was "based on the assumption that Mr. Tsai was interacting with the MDSOL folder, as stored on the QNAP [drive] and D-Link [drive], using Mac computers." Crain testified to that effect in his deposition and speculated that inconsistencies in

4

the "last accessed" dates may have been the result of Tsai using non-Mac copying methods. To the extent Veeva now intends to introduce alternative explanations of how "last accessed" dates operate when files are copied, it may only do so with respect to alternative explanations explicitly disclosed in the Crain Report. *See* Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(B).

### IV.   CONCLUSION

For the reasons stated above, Medidata MIL 3 is **denied**. At trial, Veeva may not introduce explanations for how "last accessed" dates respond to file copying that are not explicitly set forth in the Crain Report. The Clerk of Court is respectfully directed to close the entry at Docket No. 427.

Dated:  February 24, 2022
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE